UNITED STATES OF AMERICA,

     Plaintiff,

V.

EDWARD J. ANDERSON, IV,

     Defendant.

CRIMINAL NO. 5:19-24-KKC

OPINION AND ORDER

*** *** ***

This matter is before the Court on the Defendant's Motion to Suppress. (DE 15). For the reasons stated below, that Motion is **DENIED**.

## I.    BACKGROUND

On September 4, 2018, Richmond Police Officers conducted a traffic stop on a vehicle and located 19 grams of a substance containing fentanyl and 35 grams of methamphetamine wrapped in a yellow dollar general bag. The occupant of the vehicle ("informant") agreed to cooperate with the police, and he advised Detective Hunter Harrison that the day before, he purchased approximately two ounces of methamphetamine and 20 grams of heroin from an African American male known as E.J. (DE 15-3 at 2.) The informant further stated that he had known E.J. for approximately nine months and met him through an associate named Chris Coleman. (DE 21 at 2.) The police were familiar with Coleman from past drug-trafficking investigations. The informant described E.J. as an African American male with a medium skin-tone, some facial hair, and speaking with a northern accent. The informant provided police with two phone numbers for E.J. (DE 21 at 2.)

The informant explained that he purchased the drugs from E.J. at an associate's residence on Brooks Road in Madison Village, Richmond, Kentucky (the "Brooks Road Residence"). (DE 21 at 2.) The police were familiar with the Brooks Road Residence and the Denny family, who lived there, from past drug trafficking investigations. The informant stated that E.J. did not live at that residence, but he routinely distributed drugs from there. (DE 21 at 2.) The informant told police that E.J. likely lived in the Madison Village area because it always took a short amount of time for E.J. to meet him at the Brooks Road Residence. The informant stated that he could get more drugs from E.J., and he was willing to set up another purchase. (DE 21 at 2.)

Harrison discussed the case with other officers at the Richmond Police Department and Sheriff's Office. Detective Jason Parker informed Harrison that the Sheriff's Office had received multiple drug-trafficking complaints about "New England Eddie," who lived on Jonathan Drive in Madison Village and matched the physical description of E.J. Parker stated that New England Eddie's information would be in the system from past investigations.

Harrison searched the police databases and found a license for Edward Anderson living at 113 Jonathan Drive in Madison Village (the "Jonathan Drive Residence"). Additionally, the phone number provided in the police database matched one of the numbers provided by the informant. Harrison then ran the license through additional databases and discovered that Edward Anderson had a previous license issued by Rhode Island and was a convicted felon.

Harrison also searched Facebook by looking through Coleman's friends. He located a page for Edward Anderson that matched the license picture. Harrison showed both the license and Facebook photos to the informant, who confirmed that the individual pictured was the person who had sold him drugs the day before.

The informant then contacted E.J. to set up a controlled purchase. The informant texted E.J. "Hey you ready." E.J. replied "2 whole of clear n 10g food?" (DE 21 at 4.) Detective Harrison knew from his training and experience that "whole" referred to methamphetamine and "food" referred to heroin. (DE 21 at 4.)

The informant then placed a series of phone calls to E.J. E.J. promptly returned one of the calls and discussed the purchase. The informant and E.J. discussed meeting around 4 p.m. later that day at the Brooks Road Residence "like yesterday." (DE 21 at 4.) During this call, police also confirmed that Coleman was an associate of both E.J. and the informant.

Later that day, the informant and E.J. exchanged the following text messages:

| | |
|---|---|
| Informant: | On the interstate now |
| E.J.: | K |
| E.J.: | Got $2K? |
| Informant: | Yes I'm good be there in like 10 |
| E.J.: | K |
| Informant: | Hey my ride is fixing to drop me off in the entrance now. I'm gonna just walk down there. (DE 21 at 4.) |

At 4:34 p.m. on September 4, 2018, a final call was placed between the informant and E.J. During this conversation, E.J. inquired "are you at the house yet?" (DE 21 at 4.) The informant replied that he was almost there. They agreed to meet at the Brooks Road Residence. Police believed that E.J. was at his home because in the background of the conversation, E.J. is heard telling his daughter to watch the kids while he goes to "get into something." (DE 21 at 4.)

While Harrison and the informant were setting up the controlled purchase, other officers were surveilling the Jonathan Drive Residence. The surveilling officers were in communication with Harrison, who notified them of the conversations between the informant

and E.J. At the conclusion of the final call, Harrison informed the surveilling-officers that E.J. stated he was heading toward the Brooks Road Residence. (DE 21 at 5.) Within minutes, an individual exited the Jonathan Drive Residence and headed toward the Brooks Road Residence. The officers on the scene had a clear view of the individual and identified him as Edward Anderson based on the description provided by the informant, license photo, and Facebook photos.

The officers then approached Anderson, who was now aware of police presence. Anderson turned back toward the Jonathan Drive Residence and began reaching at his waistband. (DE 21 at 5.) Officers exited their vehicle, and Detective Joseph Lain, concerned for police safety, had his weapon drawn in a low-grade position based on the furtive movements at Anderson's waistband. The police issued multiple requests for the Defendant to show his hands and get on the ground. (DE 21 at 5.) Anderson eventually complied, and Parker detained him. (DE 21 at 5.)

Officers frisked Anderson and immediately located a stolen, loaded firearm in his waistband. (DE 21 at 5-6.) Officers then located a package of 11 grams of suspected heroin and 58 grams of suspected meth wrapped in a yellow dollar general bag—packaged the same as the drugs found on the informant earlier that day.

The police then sought a search warrant for the Jonathan Drive Residence. The affidavit for the search warrant states as follows:

> On September 4, 2018, at approximately 1330 hours I made contact with a confidential source at the Richmond Police Department. Confidential source stated a black male, known as "EJ," later positively identified as Edward Anderson, is a large scale drug trafficker, distributing large quantities of heroin and methamphetamine to residents of Madison County. Confidential source stated that Anderson lived in the area of Johnathan Drive and has purchased illegal narcotics from Anderson on numerous occasions.
>
> Members of the Madison County Drug Task Force have also received complaints of Anderson trafficking drugs previously.

Confidential source had made contact with Anderson and advised affiant he was supposed to meet Anderson in the area of 313 Brooks Road with approximately two ounces of methamphetamine and ten grams of heroin.

Investigators conducted surveillance at Anderson's residence, 113 Jonathan Drive, and observed Anderson exiting the residence walking towards Brooks Road. Upon making contact with Anderson, Detective Jason Parker (MSO) conducted a frisk of Anderson and felt what he immediately recognized as a handgun on the right side of his waistband. Upon running a LINK/NCIC check on the handgun, 9mm Taurus (S/N: TKS39248), it came back reported stolen in Somerset, KY in 2017.

Det. Parker also felt a large bulge in Anderson's left pant pocket, consistent with packaged drugs. Upon searching Anderson's person, investigators located a large amount of suspected methamphetamine and heroin in his left pocket. Investigators detained Anderson and secured his residence, awaiting the search warrant.
(DE 15-2 at 2-3.)

Harrison had the affidavit reviewed by the Madison County District Attorney's Office and then submitted it to Judge Charles Hardin. Judge Hardin issued a search warrant for the Jonathan Drive Residence at approximately 7:28 p.m. the same day. (DE 21 at 7.)

Police searched the residence and located approximately 213 grams of heroin, 710 grams of suspected methamphetamine, a few Xanax tablets, electronic digital scales, drug paraphernalia, $140.00 U.S. currency, a Marlin rifle with scope, and various ammunition. (DE 21 at 7.)

Anderson filed a Motion to Suppress, seeking to suppress all evidence against him. Anderson asserted the following arguments: (1) officers unlawfully seized him without probable cause or reasonable suspicion; (2) the affidavit supporting the search warrant did not establish probable cause; and (3) the good faith exception is not applicable. (DE 15-3 at 1.)

The Court held an evidentiary hearing on May 16, 2019 where detectives Harrison, Lain and Parker testified to the facts stated above. For reasons stated more fully on the record, the detectives' testimony evidenced sufficient corroboration of the informant's information,

such that there was probable cause to seize and search Anderson upon his departure from the Jonathan Drive Residence. The Court took the other two issues under advisement.

Following the hearing, Defense requested the opportunity to submit additional authority on the good faith exception issue. (DE 24.) Specifically, Defense sought to submit authority on whether a court may consider in its good faith exception analysis that the officer's sought review of the search warrant affidavit from a county attorney prior to seeking a judge's approval. (DE 24 at 1.) This Court granted Defense counsel's request and provided the United States with an opportunity to respond. (DE 25.)

The Court considers the evidence presented at the evidentiary hearing and the parties' briefings below. The Court declines to determine whether the affidavit establishes probable cause to search. However, as further explained below, the Court finds that the good faith exception is applicable, and accordingly, the Defendant's Motion to Suppress is denied.

## II.  ANALYSIS

A search warrant issued by a judge that is subsequently determined to be invalid does not require suppression if the officer acted in good faith and within the scope of the warrant. *United States v. Leon*, 468 U.S. 897, 920 (1984). There are four exceptions to this rule: (1) the affidavit contains information that the affiant knew or should have known to be false; (2) the issuing Magistrate lacked neutrality and detachment; (3) the affidavit is devoid of information to support a probable cause determination making any belief that probable cause exists completely unreasonable; or (4) the warrant is facially deficient. *Id.* at 923.

Here, Anderson argues that the affidavit in support of the search of the Jonathan Drive Residence is devoid of information to support a probable cause determination making any belief that probable cause exists completely unreasonable and the warrant is facially deficient. (DE 15-3 at 11.) The Court disagrees.

The good faith exception applies unless the affidavit is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Leon*, 468 U.S. at 923. This standard is less demanding than the "substantial basis" threshold required to prove the existence of probable cause. *United States v. Bynum*, 293 F.3d 192, 195 (4th Cir. 2002). Moreover, the good faith exception applies where the affidavit contains "a minimally sufficient nexus between the illegal activity and the place to be searched." *United States v. Brown*, 828 F.3d 375, 385 (6th Cir. 2016). "All that's required in the *Leon* context are facts that show a nexus and that are not "so vague as to be conclusory and meaningless." *United States v. Ardd*, 911 F.3d 348, 351 (6th Cir. 2018). Determination of good faith reliance is bound by the four corners of the affidavit. *United States v. Laughton*, 409 F.3d 744, 751 (6th Cir. 2005) ("Whether an objectively reasonable officer would have recognized that an affidavit was so lacking in indicia of probable cause as to preclude good faith reliance on the warrant's issuance can be measured only by what is in that affidavit.")

It is "not entirely unreasonable for an officer to infer a connection between evidence of drug trafficking and a drug dealer's home." *Ardd*, 911 F.3d at 351. *See e.g. United States v. Gunter*, 551 F.3d 472, 481 (6th Cir. 2009); *United States v. Gunter*, 266 F. App'x 415, 419 (6th Cir. 2008); *United States v. Miggins*, 302 F.3d 384, 393-94 (6th Cir. 2002); *United States v. Caicedo*, 85 F.3d 1184, 1192 (6th Cir. 1996). In fact, a substantial nexus, sufficient to establish probable cause, exists between a known drug dealer's criminal activity and the dealer's residence "when some reliable evidence exists connecting the criminal activity with the residence." *Gunter*, 266 F. App'x at 419 (Court found a substantial nexus where the affiant stated that in his experience, dealers typically keep evidence of their crime in their residence and described an incident where law enforcement agents directly observed the Defendant visiting his residence right before traveling to the site of a drug sale.)

The Court finds that the affidavit supporting the search warrant for the Jonathan Drive Residence contains at least "a minimally sufficient nexus between the illegal activity and the place to be searched," *See Brown*, 828 F.3d at 385, and the facts are not "so vague as to be conclusory and meaningless." *See Ardd*, 911 F.3d at 351. The affidavit contains the following facts establishing a minimally sufficient nexus: (1) the informant stated E.J. is a large scale drug trafficker distributing large quantities of heroin and methamphetamine; (2) police positively identified E.J. as Edward Anderson; (3) the informant stated that Anderson lived in the area of Jonathan Drive; (4) the informant stated that he purchased illegal narcotics from Anderson on numerous occasions; (5) members of the Madison County Drug Task Force have previously received complaints of Anderson trafficking drugs; (6) the informant made contact with Anderson to purchase approximately two ounces of methamphetamine and ten grams of heroin on the afternoon of September 4, 2018; (7) the informant advised the affiant that he was supposed to meet Anderson near 313 Brooks Road; (8) officers were conducting surveillance of the Jonathan Drive Residence and observed Anderson exit the residence walking toward Brooks Road; and (9) officers made contact with Anderson outside his home and frisked him, locating a stolen handgun and a large amount of suspected methamphetamine and heroin. (DE 15-2 at 2-3.) The affidavit was also reviewed and signed by a County Attorney on the evening of September 4, 2018, prior to being presented to Judge Hardin. (DE 15-2 at 3.) Notably, as evidenced by the affidavit, the entire investigation was performed in a single afternoon.

The affidavit relies primarily on information provided by a cooperating informant and the detectives' observations from the investigation that day. Even though some of the foregoing facts are somewhat conclusory, the affidavit establishes that an informant tipped the police as to a large-scale drug trafficker living near Jonathan Drive in Madison Village. Further, the informant identified the trafficker as E.J. and stated that he was presently trafficking

large quantities of heroin and methamphetamine. The affidavit also establishes that police identified E.J. as Edward Anderson—a person the police had received complaints about in the past for drug trafficking. The affidavit then recounts the events of that day. The informant contacted E.J.—identified as Anderson—to set up a purchase of two ounces of methamphetamine and ten grams of heroin. The purchase was intended to be completed at 313 Brooks Road, which is nearby Jonathan Drive. (*See* DE 15-2 at 1.) After the purchase and location were confirmed, Anderson, whose residence was under surveillance, was seen exiting the Jonathan Drive Residence and heading toward the site of the drug sale. Police made contact with and frisked Anderson, immediately locating a stolen handgun on his person. Further search revealed a large amount of suspected methamphetamine and heroin—the exact drugs that were prearranged by the informant for purchase. Considering the facts together, the affidavit establishes that detectives directly observed Anderson walking out of the Jonathan Drive Residence, toward the prearranged drug-sale site, carrying a firearm and large quantity of drugs. This observation connects Anderson's drug trafficking activities with the interior of the Jonathan Drive Residence and also corroborates the informant's information.

The foregoing facts may be sufficient to establish probable cause, although the Court declines to make such determination. Per the detectives' testimony at the evidentiary hearing, the affidavit certainly could have contained more information establishing probable cause. However, the affiant's failure to include all information establishing probable cause in the affidavit is not fatal because the omitted information would have only further supported a probable cause determination. *See United States v. Schumacher*, 611 F. App'x 337, 340 (6th Cir. 2015); *United States v. Chiaradio*, 684 F.3d 265, 279 (1st Cir. 2012); *Bynum*, 293 F.3d at 198–99. At the very least, the facts contained in the affidavit do create a

minimally sufficient nexus between Anderson's illegal drug trafficking activities and the Jonathan Drive Residence such that reliance on those facts was not entirely unreasonable.

In addition to the above, the Court also considers that the affiant consulted with a county attorney to review and approve of the search warrant affidavit prior to presenting it to a judge. Such approval is not conclusive of good faith reliance. *See Laughton*, 409 F.3d 744. However, it is a factor indicating good faith on behalf of the officers executing the search warrant. *See, e.g., Bynum*, 293 F.3d at 198 (The fact that the investigating agent "consulted with the prosecutor prior to applying for the search warrant provides additional evidence of his objective good faith…"); *United States v. Pappas*, 592 F.3d 799, 804 (7th Cir. 2010) (The investigator's "efforts to consult with an Assistant United States Attorney prior to seeking a warrant further demonstrate her good faith."); *United States v. Johnson*, 78 F.3d 1258, 1264 (8th Cir.1996) (Obtaining advice of a county attorney is an indication that an officer's reliance on a search warrant was objectively reasonable.); *United States v. Brown*, 951 F.2d 999, 1005 (9th Cir.1991) (Noting that "an officer's consultation with a government attorney is of significant importance to a finding of good faith…"); *United States v. Taxacher*, 902 F.2d 867, 872 (11th Cir.1990) (Stating that an officer's consultation "with the local district attorney before seeking the search warrant, and then submit[ting] the matter to a neutral magistrate" was "indicative of objective good faith"). The affidavit was presented, reviewed, and signed by a Madison County Attorney. The Court finds that the affiant's decision to consult a county attorney to approve of the search warrant affidavit prior to presenting it to a judge is a fact indicative of objective, good faith reliance on behalf of the executing officers.

The purpose of the good faith exception is to deter police misconduct, and this purpose is not served by excluding evidence seized by officers acting in good faith. *Leon*, 468 U.S. at 916. Suppression of the evidence in this case would not serve to deter police misconduct. Here, the affidavit establishes a minimally sufficient nexus between Anderson's illegal drug

trafficking activities and the Jonathan Drive Residence. Most significantly, the affidavit recounts that Anderson was observed by detectives exiting the interior of the Jonathan Drive Residence, walking toward a prearranged drug-sale site, carrying a firearm, methamphetamine, and heroin. This observation corroborates the informant's information and connects Anderson's drug trafficking activities to the Jonathan Drive Residence. Additionally, the fact that the affiant consulted a county attorney to review the search warrant's validity prior to presenting it to a judge further bolsters that the executing officers acted in good faith reliance. The Court considers the facts contained in the affidavit in their collective, and finds that the police had an objectively reasonable, good faith belief that the warrant for the Jonathan Drive Residence was based on probable cause. Accordingly, the good faith exception applies, and the evidence will not be suppressed.

### III.    CONCLUSION

Based on the foregoing, the Court **HEREBY ORDERS** that Anderson's Motion to Suppress (DE 15) is **DENIED**.

Dated May 29, 2019.

KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY